**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RAFAEL HERNANDEZ-CARRILLO,**

|  |  |
|---|---|
| **Petitioner,** | **Case No. 2:14-cv-0039** |
|  | **Crim. No. 2:08-cr-0055(2)** |
| **v.** | **Judge Graham** |
|  | **Magistrate Judge King** |

**UNITED STATES OF AMERICA,**

       **Respondent**


**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, brings this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  This matter is before the Court on the *Amended Motion to Vacate* and *Motion to Supplement,* ECF Nos. 238, 249, Respondent's *Response,* ECF No. 252, Petitioner's *Reply,* ECF No. 265, and the exhibits of the parties.

Petitioner's unopposed *Motion to Supplement,* ECF No. 249, is **GRANTED**. Petitioner's *Motion to Appoint Counsel,* ECF No. 237, is **DENIED.**

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

In 2009, Petitioner was convicted after a jury trial on charges of conspiracy to distribute over 1,000 kilograms of marijuana in violation of 21 U.S.C. § 846, and engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848.  The Court imposed a term of 360 months' imprisonment on the conspiracy conviction and life imprisonment on the CCE conviction.  On appeal, Petitioner alleged that the evidence was insufficient to sustain his

convictions and that his conspiracy conviction must be vacated because it is a lesser-included offense of the CCE count. *United States of America v. Hernandez-Carrillo,* Case No. 10-4437 (6th Cir. Dec. 21, 2011); *Order*, ECF No. 212.   The Court of Appeals for the Sixth Circuit affirmed Petitioner's CCE conviction but - agreeing with Petitioner's latter argument - vacated Petitioner's conspiracy conviction and remanded the matter to the District Court.  *Id*.  On remand, this Court dismissed the conspiracy conviction but the life sentence on the CCE conviction remained.  *Amended Judgment,* ECF No. 213.  On January 15, 2013, the Sixth Circuit affirmed the *Amended Judgment.  United States of America v. Hernandez-Carrillo*, Case No. 12-3214 (6th Cir. Jan. 14, 2013). Petitioner's *Motion to Vacate* was filed pursuant to 28 U.S.C. § 2255 on January 13, 2014,  ECF No. 223, and the *Amended Motion to Vacate*  was filed on April 17, 2014.

Petitioner alleges that his life sentence violates the Eighth Amendment; that there was insufficient evidence to support a leader and organizer role in the CCE count; and that he was denied the effective assistance of counsel during plea negotiations and because his attorney failed to request a jury instruction on multiple conspiracies or to obtain a defense expert to analyze handwriting in ledgers admitted into evidence.  Petitioner also requests an evidentiary hearing.  *Reply,* ECF No. 265, PageID# 2000.  Respondent contends that Petitioner's claims lack merit.

## Standard of Review

In order to obtain relief under 28 U.S.C. § 2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure.  *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*).  Relief under 28 U.S.C. § 2255 is available when a federal

sentence was imposed in violation of the Constitution or laws of the United States, where the trial court was without jurisdiction, or when the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,' " *Davis v. United States*, 417 U.S. 333, 346 (1974)(quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process. Mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

It is well-established that a § 2255 motion "is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained in a motion to vacate under § 2255 unless the petitioner shows: (1) cause and actual prejudice sufficient to excuse his failure to raise the claims on direct appeal or (2) that he is "actually innocent" of the crime. *Ray*, 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal citations omitted). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady,* 456 U.S. at 166.

## Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence to support a leader and organizer role in the CCE count. Petitioner presented this precise issue in his direct appeal to the United States Court of Appeals for the Sixth Circuit, which rejected that claim. *United States of America*

*v. Hernandez-Carrillo,* Case No. 10-4437 (6th Cir. Dec. 21, 2011); *Order*, ECF No. 212. Absent exceptional circumstances, "[a] § 2255 motion may not be used to relitigate an issue that was raised on [direct] appeal." *DuPont v. United States*, 76 F.3d 108-110 (6th Cir. 1996). No such exceptional circumstances are presented by this case and this Court will not again consider this claim.

**<u>Sentencing</u>**

Petitioner alleges that his life sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment and is unreasonable because it is significantly disproportionate to the sentences imposed on others convicted of similar crimes. Petitioner procedurally defaulted these claims by failing to raise them on direct appeal.

Further, he has failed to establish cause and prejudice for this procedural default. *See Massaro v. United States,* 538 U.S. 500, 504 (2003)(citing *United States v. Frady*, 456 U.S. at 167-68)). Petitioner was initially charged with conspiracy to distribute over 1,000 kilograms of marijuana, an offense that carries a mandatory minimum term of ten (10) years to life in prison. *See* 21 U.S.C. §§ 841(b)(1)(A)(vii), 846. Petitioner was also charged with, and remains convicted of, engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. Conviction on a CCE count is punishable by a term of imprisonment ranging from 20 years to life. 18 U.S.C. § 848(a). A person convicted on a CCE count "shall be imprisoned for life" if

> (1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and
>
> (2) . . . (B) the enterprise, or any other enterprise in which the defendant was the principal or one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B) of this title.

21 U.S.C. § 848(b). In initially imposing a life sentence on the CCE count, the Court stated:

> The jury found Mr. Carrillo guilty as charged in Count Two, which was the offense described in 21 United States Code Section 848. And in regard to Count Two, they made a factual finding. They unanimously found that the government has proved beyond a reasonable doubt that the enterprise was in existence during the 12-month period, from August 1st 2004 through August 1st 2005; that the defendant was either a principal administrator, organizer, leader, or one of the several principal administrators, organizers, or leaders of the criminal enterprise during that same 12-month period; and that the enterprise received $10 million in gross receipts during that same 12-month period.
>
> I heard the evidence in this case. This was an astoundingly large criminal enterprise involving literally tractor-trailer loads of marijuana and truck loads of cash as well, millions and millions of dollars.

*Sentencing Transcript*, ECF No. 209, PageID# 1589-90. Thus, Petitioner was subject to a mandatory term of life in prison. "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir.1995)(quoting *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir.1994)). *See also Harmelin v. Michigan*, 501 U.S. 957 (1991)(holding that a mandatory life sentence for possession of more than 650 grams of cocaine did not constitute cruel and unusual punishment).

Petitioner also contends that the Court should have sentenced him under the conspiracy count, rather than under the CCE count. *Traverse,* ECF No. 265. However, the Sixth Circuit vacated Petitioner's conspiracy conviction and affirmed the CCE conviction; this Court is therefore without the authority to sentence Petitioner on a conviction vacated by the Court of Appeals and there is no basis upon which to vacate the sentence affirmed by the Court of Appeals.

In his *Motion to Supplement,* ECF No. 249, Petitioner argues that sentence recommended under the United States Sentencing Guidelines was improperly enhanced four points for his leadership role in the offense.  "An allegation that the sentencing court incorrectly calculated a defendant's sentence under the Guidelines does not amount to a non-constitutional error cognizable under § 2255." *Turnage v. United States*, 2013 WL 5781169, at *3 (N.D. Ohio Oct. 25, 2013)(citing *United States v. Calderon*, Case No. 98–1336, (6th Circ., Sept. 27, 1999) (unpublished) ("Alleged Guideline violations do not constitute error that result in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure.") (citation and internal quotation omitted)). *See also Grant*, 72 F.3d at 506. Further, in light of the term of life in prison required by 21 U.S.C. § 848(b), Petitioner cannot establish prejudice by reason of this alleged error.

In short, Petitioner's challenge to his life sentence has been defaulted and is, in any event, without merit.

**Ineffective Assistance of Counsel**

Petitioner alleges that he was denied the effective assistance of counsel in a number of respects. The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).  In order to establish the denial of the effective assistance of counsel, the defendant must demonstrate that his attorney performed in a constitutionally deficient manner.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The defendant also must show that he was prejudiced by his counsel's deficiencies.  This requires a showing that his attorney's errors were so serious as to deprive the defendant of a fair trial whose

result is reliable.  *Id*.  Scrutiny of defense counsel's performance must be "highly deferential."
*Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties
inherent in making the evaluation, a court must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional assistance."  *Id* . In order to
establish the second prong of the *Strickland* test, *i.e*., prejudice, a defendant must demonstrate
that there is a reasonable probability that, but for counsel's errors, the result of the proceedings
would have been different.  *Id*. at 694. "A reasonable probability is a probability sufficient to
undermine confidence in the outcome."  *Id*. Because a defendant must satisfy both prongs of
*Strickland* in order to demonstrate ineffective assistance of counsel, should a court determine that
a defendant has failed to satisfy one prong, the court need not consider the other prong.  *Id*. at
697.

**Plea Bargaining**

Petitioner alleges that his attorney was ineffective because he failed to attempt to secure a
plea offer from the government.  Respondent has submitted the *Affidavit of Richard A. Cline,*
Petitioner's trial attorney, who states in relevant part as follows:

> Mr. Hernandez-Carrillo retained me in March of 2008.  On January
> 28, 2009, I moved to withdraw as counsel of record because Mr.
> Hernandez-Carrillo was unable to pay the fee he had agreed to pay.
> R. 70.  The district court granted my motion to withdraw on
> February 11, 2009, and then appointed me to represent Mr.
> Hernandez-Carrillo pursuant to the Criminal Justice Act.  R. 72.  I
> represented Mr. Hernandez-Carrillo through trial.  Attorney Daniel
> Kratka appeared as counsel of record for Mr. Hernandez-Carrillo
> when Mr. Kratka filed a motion for new trial on June 28, 2010.  R.
> 167.  I shipped my entire file to Mr. Kratka, and kept only those
> portions that were already in electronic format.  Accordingly, my
> records are not complete.
>
> ***

I recall only one specific conversation with Mr. Hernandez-Carrillo regarding plea negotiations. That conversation occurred when we were in the well of the courtroom during a pre-trial proceeding, and the AUSA asked me, in front of Mr. Hernandez-Carillo, whether we were willing to enter a plea to resolve the case. I immediately posed the question to my client. Because of my prior conversations with Mr. Hernandez-Carrillo on the topic, I was not surprised when he replied that he did not want to entertain a plea.

Although the conversation in the well of the Courtroom is the only specific memory I have of talking with my client about pleas, Mr. Hernandez-Carrillo made clear to me in our interviews that he did not want to plead guilty to any criminal offense.

Because I do not have access to my file and I have no recollection of specific conversations with Mr. Hernandez-Carrillo (other than the one noted above), I cannot point to any other specific day or event at which I discussed the possibility of a plea with Mr. Hernandez-Carillo. However, I can tell the Court what my routine practice is today and what that practice was in 2008-2009.

The decision whether to plead guilty to a criminal offense is a client decision. However, many clients lose trust in their attorney if the attorney repeatedly asks the client to accept a plea bargain. Accordingly, I always tell clients at the outset of representation the following:  (a) whether they plead guilty or go to trial is entirely their decision; (b) if they want me to negotiate (or attempt to negotiate) a plea agreement on their behalf, I will be happy to do so; (c) if they do not want me to negotiate (or attempt to negotiate) a plea agreement on their behalf, I will not spend any time on that effort; [d] the rules of ethics require me to communicate any plea offer the government may make; and [e] I will communicate any plea offer the government makes in the case, even if the client has already told me that he or she never wants to enter into a plea agreement.

I do recall that Mr. Hernandez-Carrillo clearly communicated to me that he was not interested in entering into a guilty plea. Given the charges against Mr. Hernandez-Carrillo, any plea that the government may have considered would have involved decades of prison time. My recollection is that Mr. Hernandez-Carrillo knew that, and did not want to accept such a sentence voluntarily.

8

*Affidavit of Richard A. Cline,* ECF No. 252-1, PageID# 1965-68.  Petitioner contends that the *Affidavit* is false and inaccurate.  *Reply,* ECF No. 265, PageID# 2002-05.

A criminal defendant is entitled to the effective assistance of counsel during the plea negotiation process.  *Lafler v. Cooper,* -- U.S. --, 132 S.Ct. 1376 (2012).

> Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385. The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as they relate to the plea negotiation stage:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available

*Smith v. United States,* 348 F.3d 545, 553 (6th Cir. 2003) (citing *United States v. Day,* 969 F.2d 39, 43 (3d Cir. 1992)).  "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye,* -- U.S. --, 132 S.Ct. 1399, 1408 (2012). The failure to do so prior to the expiration of the terms of the offer is constitutionally unreasonable. *Id.* However, a petitioner who later complains of a lost plea bargain must also establish prejudice.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable

> probability they would have accepted the earlier plea offer had
> they been afforded effective assistance of counsel. Defendants
> must also demonstrate a reasonable probability the plea would
> have been entered without the prosecution canceling it or the trial
> court refusing to accept it. . . .

*Id*. at 1409. In this regard, a petitioner must show that, "if the prosecution had the discretion to cancel [the plea offer], or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented."  *Id*. at 1410.

An attorney's failure to insist that his client accept a plea offer due to overwhelming evidence of guilt does not constitute constitutionally ineffective assistance.

> The decision to plead guilty - first, last, and always - rests with the
> defendant, not his lawyer. Although the attorney may provide an
> opinion on the strength of the government's case, the likelihood of
> a successful defense, and the wisdom of a chosen course of action,
> the ultimate decision of whether to go to trial must be made by the
> person who will bear the ultimate consequence of a conviction.

*Smith,* 148 F.3d at 552.

Petitioner does not allege, and the record does not reflect, that the government conveyed a plea offer to the defense,[1] that his attorney failed to convey that offer, or that Petitioner would have been willing to accept a plea offer had one been made.  To the contrary, Petitioner states, "[t]he Government:  is correct.  Mr. Hernandez-Carrillo did not indicate that it was his wish to enter into a plea agreement during any of the proceedings."  *Traverse,* ECF No. 265, PageID# 2003.

Under these circumstances, Petitioner has failed to establish the denial of the effective assistance of counsel in connection with plea negotiations.

**Jury Instructions**

---

[1] Respondent indicates that no plea agreement was transmitted to counsel for the petitioner between February 2008 and the conclusion of trial.  *Response,* ECF No. 252, PageID# 1960.

Petitioner alleges that the evidence established the existence of multiple conspiracies, rather than a single conspiracy as charged in the *Superseding Indictment*, and that his trial counsel was ineffective because he failed to request a jury instruction on that issue. *Amended Petition*, ECF 238, PageID# 1884.[2] Referring to various points in the trial transcript, *see Amended Motion to Vacate*, ECF No. 238, PageID# 1885-1903, Petitioner argues that conflicting testimony by prosecution witnesses and evidence of multiple buyer-seller relationships established the existence of multiple conspiracies. Petitioner contends that his counsel's failure to request a multiple conspiracies instruction caused Petitioner prejudice.[3]

The *Superseding Indictment* charged Petitioner and co-defendants with involvement in a single drug conspiracy during the period January 2004 to February 2008. As a part of the conspiracy, Petitioner was alleged to have, *inter alia*, imported thousands of kilograms of marijuana from Mexico which were then transported to Columbus, Ohio. Other individuals were paid to drive trailer loads of marijuana from Arizona to Ohio. Co-conspirators rented warehouses or storage units where hundred or thousands of kilograms of marijuana were received and stored at Petitioner's direction; co-conspirators traveled from Columbus, Ohio, to Detroit, Michigan, to receive millions of dollars of drug proceeds that had been collected by some of the co-defendants. The conspirators also recruited women to transport and deliver millions of dollars of

---

[2] An example of a jury instruction on multiple conspiracies would be:

  If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you find that some other conspiracy existed.
  If you find that a defendant was not a member of the conspiracy charged in the indictment, then you must find that defendant not guilty, even though the defendant may have been a member of some other conspiracy.

*United States v. Robison*, 205 F.3d 1342, n. 3 (unpublished), 2000 WL 191852 (6th Cir. Feb.11, 2000).

[3] In response, Petitioner's trial attorney avers that he routinely files a written request for jury instructions when he believes that an instruction is warranted. In light of his failure to do so in this case, he concludes that he did not believe the evidence warranted a multiple conspiracy instruction. *Affidavit of Richard A. Cline*, ECF No. 252-1, PageID# 1967.

drug proceeds from Columbus, Ohio, to another conspirator located in Atlanta, Georgia. *Superseding Indictment*, ECF No. 49, PageID# 154-56.

A defendant is not entitled to a jury instruction unless there is support in the evidence and the law for the request. *United States v. Wall*, 130 F.3d 739, 746 (6th Cir.1997). "'[W]hen the evidence is such that the jury could within reason find more than one conspiracy, the trial court should give the jury a multiple conspiracy instruction.'" *United States v. Caver,* 470 F.3d 220, 246 (6th Cir. 2006)(quoting *United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1982). However, if a jury could not reasonably find more than one conspiracy, no multiple-conspiracies instruction is needed, and counsel does not perform in a constitutionally ineffective manner in failing to request such an instruction. *Dawkins v. United States,* 2:11-cv-24, 2:06-cr-20(3), 2014 WL 2818889, at *23 (E.D. Tenn. June 23, 2014)(citations omitted). "[A] single conspiracy is not converted into multiple conspiracies merely because there may be some changes in persons involved or because they play different roles." *United States v. Rugiero*, 20 F.3d 1387, 1391 (6th Cir. 994)(citing *United States v. Rios,* 842 F.2d 868, 872 (6th Cir. 1988); *United States v. Bates*, 600 F.2d 505, 509 (5th Cir. 1979)).

> Each member of a conspiracy need not be shown to know each other or to have direct association with all other conspirators. *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991). . . . [P]roof of a formal agreement is unnecessary. A tacit or mutual understanding and a showing of knowing and active participation by a defendant in some act or portion of the conspiracy is all that is required. *United States v. Lee*, 991 F.2d 343, 347-48 (6th Cir. 1993).
>
> The fact that a conspiracy can be divided into distinctive sub-groups does not mean that there is more than one conspiracy. As long as the different sub-groups are committing acts in furtherance of one overall plan, the jury can still find a single, continuing conspiracy. *United States v. Warner*, 690 F.2d 545, 550 n. 8 (6th Cir. 1982).

*Rugiero*, 20 F.3d at 1391-92.  "[T]he primary risk associated with the failure to give a multiple conspiracy instruction is the transference of guilt from defendants involved in one conspiracy to defendants in another conspiracy, such that a defendant is convicted for a conspiracy for which he was not indicted."  *Id*. (citations omitted); *see also United States v. Jordan*, 511 Fed. Appx. 554, 569 (6th Cir. 2013)(same).  Neither the evidence nor the risk associated with the failure to give a multiple conspiracy instruction warrants such an instruction in this case.

In support of his claim in this regard, Petitioner refers to *Kotteakos v. United States*, 328 U.S. 750 (1946).  In *Kotteakos,* the trial court acted improperly when it instructed the jury on a single conspiracy, because "the jury could not possibly have found, upon the evidence, that there was only one conspiracy."  *Id*. at 767-68.  This Court concludes that *Kotteakos* is inapposite to the facts of this case. *See United States v. Perry*, 550 F.2d 524, 530 (9th Cir. 1977)(distinguishing *Kotteakos* where "the jury could find that each one of the defendants knew or should have known that other[s] . . .  were involved and that each had reason to believe that what benefits he received were probably dependent upon the success of the entire venture.")

> The crucial point that defendants miss. . .  is the fact that the jury could find that there were several different agreements involving the defendants, all of which would then connect the defendants to the general overall conspiracy as charged in the indictment. The government does not have to prove that all of the defendants met together at the same time and ratified the illegal scheme. This just is not the nature of a conspiracy, especially a large narcotics smuggling and distribution organization. . . . Generally, the defendants are going to meet and conspire in twos or threes in order to carry out the design of the common overall scheme. To suggest that defendants should be acquitted of the general conspiracy charge just because some of them met singly with other defendants and conspired with them to carry out the overall common distribution plan is a misapplication of the law of conspiracy. By these separate agreements the defendants became parties to the larger common plan, joined together by their knowledge of its essential features and scope, though not of the exact limits, and by their single goal. These agreements were

> merely steps in the formation of the larger and more general conspiracy. *See Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

*Id*. at 532-33.

Inconsistent statements by prosecution witnesses and proof that a number of persons obtained, stored, or delivered drugs at the behest of Petitioner do not suggest the existence of multiple conspiracies such that defense counsel performed in a constitutionally ineffective manner in failing to request a multiple conspiracies jury instruction. Observations made the United States Court of Appeals for the Sixth Circuit in affirming Petitioner's conviction are instructive in this regard:

> Hernandez-Carrillo. . . argues that he was not a principal organizer of the enterprise, but that argument is refuted by the record, which shows that the other defendants were not involved in drug trafficking prior to meeting Hernandez-Carrillo. He also argues that there is insufficient evidence that he supervised at least five other members of the enterprise. However, a review of the record shows that Hernandez-Carrillo supervised at least five other co-conspirators who acted as drug and money couriers, stored drugs, and laundered proceeds. . . Co-defendant Lee identified three other men who worked for Hernandez-Carrillo transporting and unloading drugs. Witnesses Pache and Stowers testified to working for Hernandez-Carillo as drivers, co-defendants Lee and Sangvone testified that they obtained warehouses for Hernandez-Carillo so he could store his drugs, and co-defendant Nelms was identified as a member of the conspiracy who cooperated in counting money.

*United States of America v. Hernandez-Carrillo,* No. 10-4437 (6th Cir. Dec. 21, 2011); *Order*, ECF No. 212, PageID# 1721. Further, the Court explicitly instructed the jury on all the elements required to establish guilt on the conspiracy charged in Count 1 of the *Superseding Indictment*, including that Petitioner's mere association with conspirators would not establish his membership in the conspiracy, and that he was not to be held accountable for acts of a co-conspirator that were not done in furtherance of the conspiracy or which fell outside the scope of

the unlawful plan. *Trial Transcript, Volume IV,* ECF 187, PageID# 1367-68. Under all these circumstances, Petitioner has failed that his counsel was ineffective in failing to request a multiple conspiracies instruction. Moreover, Petitioner has failed to establish that he was prejudiced by any such failure on the part of his trial counsel: the Sixth Circuit vacated his conviction on the conspiracy count and Petitioner is no longer serving a sentence on that conviction.

Petitioner has failed to establish the denial of the effective assistance of counsel based on his attorney's failure to request a jury instruction on multiple conspiracies.

### Expert Testimony

Petitioner alleges that his attorney performed in a constitutionally ineffective manner by failing to obtain expert testimony in handwriting and ledgers in order to determine whether the ledgers admitted into evidence properly counted the quantities of drugs attributed to Petitioner. *Amended Motion to Vacate*, ECF No. 238, PageID# 1906. The record includes references to the large quantities of marijuana involved in the drug operation, and to the profits gained thereby. For example, Panomphet Sangore, a co-defendant, testified that he transported $15 to $16 million in one year for Petitioner. *Trial Transcript, Volume II,* ECF No. 185, PageID# 1028. *See also Pre-sentence Investigation Report*, ECF No. 191, ¶¶ 13-35 (filed under seal); *Corrected Pre-Sentence Investigation Report*, ECF No. 199, ¶¶ 13-35 (filed under seal). Nothing in the record supports Petitioner's claim that an expert in either handwriting or ledgers would have assisted the defense. Petitioner has failed to establish prejudice in this regard, as that term is defined in *Strickland.*

Petitioner has failed to establish the denial of the effective assistance of counsel.

**Recommended Disposition**

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**<u>Procedure on Objections</u>**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

  *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
August 3, 2015